UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ROBERT D. SANGO,

                Plaintiff,                        Case No. 1:14-cv-1272

v.                                                           Honorable Gordon J. Quist

MICHIGAN OFFICE OF ADMINISTRATIVE
HEARINGS AND RULES et al.,

                Defendants.
_____/

**OPINION DENYING LEAVE
TO PROCEED *IN FORMA PAUPERIS* - THREE STRIKES**

Plaintiff Robert D. Sango, a prisoner incarcerated at Ionia Correctional Facility, filed a complaint pursuant to 42 U.S.C. § 1983.  Plaintiff seeks leave to proceed *in forma pauperis*.  Because Plaintiff has filed at least three lawsuits that were dismissed as frivolous, malicious or for failure to state a claim, he is barred from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g).  The Court will order Plaintiff to pay the $400.00 civil action filing fee applicable to those not permitted to proceed *in forma pauperis* within twenty-eight (28) days of this opinion and accompanying order.  If Plaintiff fails to do so, the Court will order that his action be dismissed without prejudice.  Even if the case is dismissed, Plaintiff will be responsible for payment of the $400.00 filing fee in accordance with *In re Alea*, 286 F.3d 378, 380-81 (6th Cir. 2002).

**Discussion**

The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which was enacted on April 26, 1996, amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*.  As the Sixth Circuit has stated, the PLRA

was "aimed at the skyrocketing numbers of claims filed by prisoners – many of which are meritless – and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). For that reason, Congress put into place economic incentives to prompt a prisoner to "stop and think" before filing a complaint. *Id.* For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b). The constitutionality of the fee requirements of the PLRA has been upheld by the Sixth Circuit. *Id.* at 1288.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits. Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the section governing proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The statutory restriction "[i]n no event," found in § 1915(g), is express and unequivocal. The statute does allow an exception for a prisoner who is "under imminent danger of serious physical injury." The Sixth Circuit has upheld the constitutionality of the "three-strikes" rule against arguments that it violates equal protection, the right of access to the courts, and due process, and that it constitutes a bill of attainder and is *ex post facto* legislation. *Wilson v. Yaklich*, 148 F.3d 596, 604-06 (6th Cir. 1998); *accord Pointer v. Wilkinson*, 502 F.3d 369, 377 (6th Cir. 2007) (citing *Wilson*, 148 F.3d at 604-06); *Rodriguez v. Cook*, 169 F.3d 1176, 1178-82 (9th Cir. 1999); *Rivera*

*v. Allin*, 144 F.3d 719, 723-26 (11th Cir. 1998); *Carson v. Johnson*, 112 F.3d 818, 821-22 (5th Cir. 1997).

Plaintiff has been an active litigant in the federal courts in Michigan. In more than three of Plaintiff's lawsuits, the Court entered dismissals on the grounds of failure to state a claim. *See Sango v. Huss*, No. 1:14-cv-2 (W.D. Mich. June 12, 2014); *Sango v. Miniard et al.*, 1:14-cv-344 (W.D. Mich. June 10, 2014); *Sango v. Hammond et al.*, No. 1:14-cv-283 (W.D. Mich. May 6, 2014); *Sango v. Novak*, No. 1:14-cv-343 (W.D. Mich. Apr. 23, 2014). In addition, Plaintiff previously was denied leave to proceed *in forma pauperis* in this Court because he has three strikes. *See Sango v. Curtis et al.*, No. 1:14-cv-823 (W.D. Mich. Aug. 14, 2014); *Sango v. Wakley et al.*, 1:14-cv-703 (W.D. Mich. July 8, 2014). Moreover, Plaintiff's allegations do not fall within the exception to the three-strikes rule for a prisoner under imminent danger of serious physical injury.

The Sixth Circuit set forth the following general requirements for a claim of imminent danger:

> In order to allege sufficiently imminent danger, we have held that "the threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (internal quotation marks omitted). "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id.* at 797–98; *see also* [*Taylor v. First Med. Mgmt.*, 508 F. App'x 488, 492 (6th Cir. 2012)] ("Allegations of past dangers are insufficient to invoke the exception."); *Percival v. Gerth*, 443 F. App'x 944, 946 (6th Cir. 2011) ("Assertions of past danger will not satisfy the 'imminent danger' exception."); *cf.* [*Pointer v. Wilkinson*, 502 F.3d 369, 371 n.1 (6th Cir. 2007)] (implying that past danger is insufficient for the imminent-danger exception).
>
> In addition to a temporal requirement, we have explained that the allegations must be sufficient to allow a court to draw reasonable inferences that the danger exists. To that end, "district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are conclusory or ridiculous, or are clearly baseless (i.e. are fantastic or delusional and rise to the level of irrational or wholly incredible)." *Rittner*, 290 F. App'x at 798 (internal quotation marks and citations omitted); *see also Taylor*, 508 F. App'x at 492 ("Allegations that

>are conclusory, ridiculous, or clearly baseless are also insufficient for purposes of the imminent-danger exception.").

*Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580, 585 (6th Cir. 2013). A prisoner's claim of imminent danger is subject to the same notice pleading requirement as applied to prisoner complaints. *Id*.

Here, Plaintiff sues the Michigan State Office of Administrative Hearings and Rules (MSOAHR) and an administrative hearings officer, Susan Morris. Plaintiff claims that in September 2014, he was found not guilty of assaulting a corrections officer. Twenty minutes later, officers came to his cell and told him to "cuff up" because Officer Lahr had accused Plaintiff of threatening to kill him. (Compl., docket #1, Page ID#2.) Plaintiff was then charged with a misconduct and placed in segregation, where he was not allowed to shower for 21 days. During that time, he contracted a skin disease because his cell had not been disinfected and he was not allowed to wash his clothing. On the day of his misconduct hearing, officers falsely reported to Defendant Morris that Plaintiff refused to attend the hearing. Officer Morris subsequently found Plaintiff guilty of the misconduct, relying solely on the Officer Lahr's account. Morris disregarded Plaintiff's written explanation of what occurred. By doing so, Plaintiff claims that she did not follow Michigan Administrative Rule 791.3310(2)(a). As a result of the misconduct conviction, Plaintiff was confined in segregation.

On November 14, 2014, Plaintiff gave a prisoner counselor a letter stating that he would "look her up after [he] was released to take her out dancing[.]" (Compl, docket #1, Page ID#2.) An hour later, prison officers came to Plaintiff's cell. The counselor accused Plaintiff of saying that he would "kill her or [Plaintiff] if [he] could have her." (*Id.*) Plaintiff was charged with another misconduct, and at the misconduct hearing, Defendant Morris found Plaintiff guilty without reviewing video footage of the interaction between Plaintiff and the counselor. As a result of the

- 4 -

conviction, Plaintiff was again placed in segregation. Since that time, Plaintiff claims that unidentified officers have started to "retaliate" against him, trying to cause him to "react adversely" so that they can "kill or harm" him. (*Id.*)

In a declaration attached to the complaint, Plaintiff asserts the following additional facts:

- On November 24, 2014, Officer Watkins gave him a food tray with no food on it. Plaintiff spoke to another officer about it and shortly thereafter, Officer Watkins refused to allow Plaintiff to take a shower.

- The next day, Officer Wilkison threw Plaintiff's food on the floor and slammed Plaintiff's hand in the foot slot. Plaintiff told Sergeant Garmolio about it and Garmolio promised to check the security camera and to have a nurse come to Plaintiff's cell, but Wilkison would not allow the nurse to see Plaintiff. That evening, Wilkison "slammed" Plaintiff's "flap" every half hour from 10:00 pm to 6:00 am the next morning. (Attach. to Compl., docket #1-1, Page ID#5.)

- On November 25, 2014, Officer Eryer told Plaintiff that he would "not survive segregation this time[.]" (*Id.*)

- On November 30, 2014, Officers Richardson and Watkins threatened to "ram a flashlight up [Plaintiff's] ass." (*Id.*)

- On December 3, 2013, Officer Eryer gave Plaintiff a breakfast tray with no food on it.

Plaintiff does not face a risk of imminent harm as a result of the actions by Defendants Morris and MSOAHR. Indeed, Plaintiff does not make any allegations against Defendant MSOAHR other than the fact that it employs Defendant Morris. Moreover, Defendant

Morris is being sued solely because she found Plaintiff guilty of two misconducts. The latter conduct did not subject Plaintiff to a risk of physical injury. Plaintiff alleges that other officers have mistreated him, but their conduct is not relevant to his claim against Defendants; thus, it is not relevant to his ability to proceed *in forma pauperis* under the imminent-danger exception. The ostensible purpose of that exception is to allow prisoners with three strikes to remedy serious dangers facing them. *See Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009) ("[The] unmistakable purpose [of the imminent danger exception] is to permit an indigent three-strikes prisoner to proceed IFP in order to obtain a judicial remedy for an imminent danger.").[1] To make a finding of imminent danger in this case based on conduct that is not at issue in the complaint would not serve that purpose; allowing Plaintiff to proceed in this action would not remedy any risk of harm stemming from that conduct.

Moreover, even if the Court were to consider the conduct of the other individuals who are not defendants in this action, Plaintiff's allegations would not satisfy the imminent-danger exception. Plaintiff's assertion that he was deprived of a shower and a few meals, that he had his hand "slammed" in the food slot, and that he was not able to see a nurse for an unidentified injury concerns past conduct, not a present risk of harm. *See Vandiver*, 727 F.3d at 585. Plaintiff implies that this conduct is part of an ongoing pattern of mistreatment, but the Court notes that Plaintiff has not alleged any significant physical injury or risk of harm arising from his mistreatment thus far. Even assuming that he continues to receive empty threats from prison officials and to experience

---

[1] The Sixth Circuit has not squarely addressed this issue. In *Vandiver*, it noted the holding in *Pettus*, but declined to decide whether § 1915(g) requires that at least one claim in the complaint be related to the imminent danger, because that condition was satisfied in that case. *See Vandiver*, 727 F.3d at 589 ("Because Vandiver alleges dangers that are plainly traceable to his Eighth Amendment claims of deliberate indifference . . . [his] complaint would satisfy the Second Circuit standard.").

isolated instances of minor mistreatment, these allegations fall far short of demonstrating that he subject to an imminent risk of serious physical injury.

Plaintiff also claims that officers have plotted to kill him and that they have a "$200.00 hit" on him (Compl., docket #2, Page ID#2), but this claim is unsupported by any plausible allegations of fact. Consequently, for all the foregoing reasons, § 1915(g) prohibits Plaintiff from proceeding *in forma pauperis* in this action.

Plaintiff has twenty-eight (28) days from the date of entry of this order to pay the entire civil action filing fee, which is $400.00. When Plaintiff pays his filing fee, the Court will screen his complaint as required by 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c). If Plaintiff fails to pay the filing fee within the 28-day period, his case will be dismissed without prejudice, but he will continue to be responsible for payment of the $400.00 filing fee.


Dated:  January 13, 2015                            /s/ Gordon J. Quist
                                                   GORDON J. QUIST
                                           UNITED STATES DISTRICT JUDGE


**SEND REMITTANCES TO THE FOLLOWING ADDRESS**:
Clerk, U.S. District Court
399 Federal Building
110 Michigan Street, NW
Grand Rapids, MI 49503

**All checks or other forms of payment shall be payable to "Clerk, U.S. District Court."**